Argued and submitted October 22,
affirmed December 24, 1979

# STATE OF OREGON,
*Respondent,*

*v.*

# MARGARET EVALINA CHAPUT,
*Appellant.*

## (No. 154483, CA 13899)

604 P2d 435

Jim Hilborn, Corvallis, argued the cause for appellant. With him on the brief was Poling & Hilborn, Corvallis.

Robert C. Cannon, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Joseph, Presiding Judge, and Lee and Richardson, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

In a trial to the court, defendant was convicted of driving while under the influence of intoxicants. ORS 487.540. On appeal she assigns as errors (1) the trial court's failure to dismiss on the ground that the stop was unlawful and (2) its failure to suppress statements made by defendant at the scene of her arrest.

At about midnight, defendant was observed by an off-duty state trooper and his spouse to be driving erratically. The trooper followed her in his unmarked private car until defendant voluntarily stopped, or was induced to stop by the trooper, who then walked up to defendant's car window, switched off the ignition and removed the keys. He told defendant his wife was calling the police. The trooper was not in uniform and did not display a badge or identification card. The defendant claims he told her he was an off-duty officer, but he denies identifying himself or being asked to do so.

The trooper testified that he asked questions of the sort he would routinely ask if he were on duty investigating a drunk driving case, such as "Have you been drinking?"; he did not, however, advise defendant of her *Miranda* rights. He asked to see and then kept her driver's permit. When two state troopers arrived on the scene, defendant was emotionally upset. She admitted to them that she was drunk and said that she had multiple sclerosis. She was then told her rights and taken into custody.

Defendant first argues that the stop was unlawful because the trooper did not identify himself as a police officer. ORS 487.105.[1] That statute does not by its terms relate to the validity of a stop or arrest. Moreover, the trial court expressly found the trooper to be

---

[1] ORS 487.105:

> "Any police officer attempting to enforce the traffic laws of this state shall be in uniform or shall conspicuously display an official identification card showing his lawful authority."

[833]

acting in the capacity of a citizen. Inasmuch as that finding is a determination of fact, it is supported by substantial evidence in the record, and we will not disturb it. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). The trial court concluded that there was no "stop" of defendant. A "stop" is defined by ORS 131.605(5) as "a temporary restraint of a person's liberty by a peace officer lawfully present in any place." Under this definition a citizen could not make a "stop."

Defendant also argues, however, that the officer acting as a citizen did not follow the procedures outlined in ORS 484.150(5) for a traffic citation to be issued by a citizen.[2] A citizen may arrest for a crime committed in his presence. ORS 133.225. Driving while under the influence of intoxicants is criminal in nature. *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 109, 570 P2d 52 (1977). The off-duty officer, acting as a citizen, could have arrested defendant for driving under the influence of intoxicants and was not required to follow any set procedures in initiating law enforcement action. The motion to dismiss was properly denied.

Further, defendant argues that she was in custody once her car keys were taken away, and that because the *Miranda* rights were not explained to her, her

---

[2] ORS 484.150(5):

"(5) The complaint shall contain a form of certificate by the complainant to the effect that he certifies, under the penalties provided in ORS 484.990, that he has reasonable grounds to believe, and does believe, that the person cited committed the offense contrary to law. The certification if made by a police officer need not be made before a magistrate or any other person. A private person shall certify before a magistrate, clerk or deputy clerk of the court and this action will be entered in the court record. The reverse side of the complaint shall contain the substance of the matters appearing on the reverse side of the Uniform Traffic Ticket and Complaint promulgated by the American Bar Association, and set forth in the Model Rules Governing Procedure in Traffic Cases, approved by the National Conference of Commissioners on Uniform Laws, July 8-13, 1957. A certificate conforming to this section shall be deemed equivalent of a sworn complaint."

statements admitting guilt must be suppressed. When the state troopers arrived, the circumstances were short of custodial. Removal of the car keys did not constitute custody, *State v. Henson*, 23 Or App 234, 238, 541 P2d 1085 (1975), *rev den* (1976); nor did confiscation of her operator's permit amount to custody. *State v. Egger*, 24 Or App 927, 930, 547 P2d 643, *rev den* (1976). Defendant testified that the trooper's first words to her were that she was not to try to leave. She suggests that once the troopers were informed that she had multiple sclerosis, a custodial situation was somehow present. In *State v. Taylor*, 249 Or 268, 270, 437 P2d 853 (1968), no *Miranda* warnings were required even though the police during initial questioning would not have let the defendant leave the scene. The off-duty trooper's actions as a citizen could not have been subject to a stricter rule. Defendant's disability here did not alter the context of on-the-scene, non-coercive questioning by a citizen initiating an arrest or render inadmissible a volunteered admission. In sum, defendant was not in custody for the purpose of *Miranda* warnings when she admitted guilt to the two state officers who arrived on the scene.

Affirmed.