Argued and submitted December 22, 2003, reversed and remanded May 12, 2004

## STATE OF OREGON,
*Appellant,*

*v.*

## TROY ALAN OAKES,
*Respondent.*

02CR0641; A119745

89 P3d 1274

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, and Paul L. Smith, Assistant Attorney General.

Stephanie Hortsch, Deputy Public Defender, argued the cause for respondent. With her on the brief were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant is charged with attempting to elude a police officer. ORS 811.540.[1] The state appeals the trial court's order granting defendant's pretrial motion to suppress evidence obtained as a result of an allegedly unlawful traffic stop. We reverse and remand.

On March 21, 2002, Officer Shawn Chase, a Coquille tribal police officer and deputy sheriff of Coos County, stopped defendant on a road in Coos County. Defendant was driving his vehicle and pulling an attached trailer. The trailer had no brake lights or license plate, and it obstructed the brake and turn signal lights on defendant's car, as well as defendant's license plate. Chase observed loose equipment moving around in the trailer and concluded that the equipment was in danger of creating a traffic hazard. He initiated the traffic stop by turning on his overhead lights, followed by his siren and his air horn when defendant failed to respond to the overhead lights. Defendant pulled over, and Chase approached the vehicle. Chase identified himself as a Coquille tribal police officer and explained the reasons for which he had stopped defendant.

The traffic stop took place on nonreservation land within the county. Chase had been deputized by the Coos County Sheriff's Department in 1999, and that cross-deputization was in effect at the time of the traffic stop at issue. At the time of the stop, Chase was dressed in his tribal police uniform and drove a vehicle marked as a tribal police vehicle.

---

[1] ORS 811.540(1) provides, in relevant part, that a person commits the crime of fleeing or attempting to elude a police officer if:

"(b) A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A) The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B) The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

Chase did not identify himself to defendant as a deputy sheriff, nor did he provide defendant with a badge or other identification indicating that he was acting in any capacity other than as a tribal police officer.

Chase asked defendant for his driver's license, registration, and proof of insurance. Defendant did not produce his driver's license, but he gave Chase his name, address, and date of birth. Chase returned to his patrol vehicle to submit defendant's information to his dispatcher. While Chase was at his patrol vehicle, he saw defendant open his car door and walk towards the patrol vehicle. Chase yelled at defendant to return to his car, and defendant began to do so. However, defendant apparently changed his mind and ran from his car into some nearby woods. Chase yelled to defendant, "Police. Stop." After defendant ran into the woods, Chase was informed by the dispatcher that defendant had an outstanding felony drug warrant for his arrest. Chase then searched for defendant with the assistance of a canine unit but was unable to locate him. Later, defendant was charged with attempting to elude a police officer. At a pretrial hearing, he moved to exclude "all evidence, physical and testimonial, resulting from Coquille Tribal Police Officer Chase's traffic stop of the defendant, on the grounds * * * that Officer Chase is not a 'peace officer,' and that the defendant was illegally stopped."

■ ■ We review the trial court's grant of defendant's motion to suppress for errors of law, *State v. Warner*, 181 Or App 622, 624, 47 P3d 497, *rev den*, 335 Or 42 (2002), and we are bound by the trial court's findings of fact so long as there is constitutionally sufficient evidence in the record to support them. *State v. Pamperien*, 156 Or App 153, 155, 967 P2d 503 (1998). Under Oregon statute, a police officer is authorized to make a traffic stop pursuant to ORS 810.410(3).[2] ORS

---

[2] ORS 810.410(3) provides, in part:

"A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification, and issuance of citation."

801.395 defines a "[p]olice officer" to include "a member of the Oregon State Police, a sheriff, *a deputy sheriff* or a city police officer." (Emphasis added.) It is undisputed that Chase was a "deputy sheriff" within the meaning of ORS 801.395 at the time of the traffic stop. However, the parties dispute whether the officer's failure to identify to defendant that he was exercising his authority as a deputy sheriff, as distinguished from his authority as a tribal officer, invalidated the stop.

Under ORS 810.400, an officer enforcing traffic laws must display proper identification to a defendant. Specifically, ORS 810.400 provides:

> "Any police officer attempting to enforce the traffic laws of this state shall be in uniform or shall conspicuously display an official identification card showing the officer's lawful authority."

The trial court reasoned that "a Tribal Officer can't act in the capacity of a Deputy Sheriff, not wearing the uniform or otherwise displaying their authority." In reaching that conclusion, the trial court relied on *State v. Beaman*, 42 Or App 57, 599 P2d 476 (1979), in which we held, under a former statute,[3] that the defendant could not be convicted of attempting to elude a police officer because the officer failed properly to identify the authority that the officer was exercising. In *Beaman*, a university campus security officer, who was also a deputy sheriff, attempted to stop the defendant. Because the security officer in *Beaman* was dressed in his security uniform, drove a security vehicle with university markings, and presented no identification to the defendant of his status as a deputy sheriff, we reversed the defendant's conviction in light of the element of the crime in *former* ORS 487.555 (1977) that the police officer be in uniform or operating an official police vehicle at the time of the traffic stop.

In contrast to the sufficiency of the evidence issue in *Beaman*, the issue of whether the stop of defendant was

---

[3] *Former* ORS 487.555 (1977), *repealed by* Oregon Laws 1983, chapter 338, section 978, defined a police officer for purposes of the statute as "a sheriff, municipal policeman or member of the Oregon State Police in uniform, prominently displaying his badge of office or who is operating a vehicle appropriately marked showing it to be an official police vehicle."

unlawful turns on the meaning of ORS 810.400, ORS 810.410, and ORS 136.432.[4] In *State v. Mesa*, 110 Or App 261, 264, 822 P2d 143 (1991), *rev den*, 313 Or 211 (1992), we held:

> "Defendant also argues that the stop was unlawful, because ORS 810.400 requires that police officers who enforce traffic laws must either be in uniform or show official identification. [The officers who stopped the defendant] were not in uniform, and the record is silent on whether they displayed official identification. *A violation of ORS 810.400 does not, itself, invalidate a stop. See State v. Chaput*, 43 Or App 831, 833, 604 P2d 435 (1979). The stop was lawful."

*Id.* at 264 (some emphasis added). In general, ORS 810.410(3) authorizes the stop of a person who commits a traffic violation in the officer's presence. Under *Mesa*, a violation of ORS 810.400 does not deprive a police officer of authority under ORS 810.410 to conduct a traffic stop. Although defendant seeks to have us distinguish the holding in *Mesa* from this case, we need not accept his invitation, particularly when ORS 810.400 and ORS 810.410(3) are read in context with the provisions of ORS 136.432. We are mindful of the admonition of ORS 174.010 that "the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained" in the language of a statute. ORS 810.400 contains no language that suggests that, if the statute is violated, the resulting traffic stop is unlawful. More importantly, it is clear, when ORS 810.400 is read together with ORS 136.432, that the legislature intended that a violation of ORS 810.400 not result in the suppression of evidence obtained as the result of the violation. We conclude for the

---

[4] ORS 136.432 provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution;

"(2) The rules of evidence governing privileges and the admission of hearsay; or

"(3) The rights of the press."

Defendant does not argue that his constitutional rights were violated when the stop was made.

above reason that Chase's failure to identify himself as a deputy sheriff did not require suppression.[5]

Reversed and remanded.

---

[5] We do not decide in this case whether the evidence is legally sufficient for purposes of a conviction under ORS 811.540, only that the evidence of the stop is not subject to exclusion. *See also* ORS 801.395.