Argued and submitted May 28, 2009, affirmed February 3,
petition for review denied June 11, 2010 (348 Or 414)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RANDY JOE ANDERSON,
*Defendant-Appellant.*

Harney County Circuit Court
0612343CR; A135502

227 P3d 192

Rebecca A. Duncan, Assistant Chief Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Doug M. Petrina, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

Defendant was charged with two counts of felon in possession of a firearm, ORS 166.270. Before trial, he demurred to the indictment, arguing that the state was required to allege and prove that he knew that he was a felon at the time that he possessed the firearms. The trial court disallowed the demurrer, and defendant was convicted on stipulated facts. Defendant now appeals, assigning error to the trial court's disallowance of his demurrer, reiterating the arguments he made before the trial court. For the reasons explained below, we affirm.

While a police officer was lawfully in defendant's house on an unrelated matter, the officer saw a pistol on the nightstand next to defendant's bed. Later, with defendant's permission, the officer looked through the house for contraband. Remembering the pistol he had seen earlier, the officer asked defendant if he had any firearms. Defendant responded that he had two firearms, a pistol that was on his nightstand and a rifle "located between his mattresses"; he noted that both firearms were loaded. In response to the officer's inquiry, defendant stated that both firearms were his. When the officer asked defendant if he was a convicted felon, defendant initially replied that he was not, but then told the officer that he might have a conviction for a commercial fishing violation.

Defendant was charged with two counts of felon in possession. The indictment alleged:

"COUNT 1
"FELON IN POSSESION OF A FIREARM
"ORS 166.270
"Class C Felony

"The said defendant, on or about the 7th day of December, 2006, in Harney County, Oregon, then and there being, having previously been convicted in Coos County, Oregon on September 11, 1992, of the felony of Violation of Commercial Fishing Laws, did unlawfully and knowingly have under said defendant's custody and control a firearm.

"COUNT 2
"FELON IN POSSESION OF A FIREARM
"ORS 166.270
"Class C Felony

"The said defendant as part of the same act or transaction set forth above and on or about same date and in Harney County, Oregon, then and there being, having previously been convicted in Coos County, Oregon on September 11, 1992, of the felony of Violation of Commercial Fishing Laws, did unlawfully and knowingly have under said defendant's custody and control a firearm, said acts of defendant being contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

As noted, before trial, defendant demurred to the indictment, arguing that the state was required to, but did not, allege that he knew he was a felon at the time he possessed the firearms. Relying on *State v. Van Norsdall*, 127 Or App 300, 873 P2d 345, *rev den*, 320 Or 131 (1994)—in which this court held that the state need not prove that a defendant charged with felon in possession knew that he was a felon—the trial court disallowed the demurrer. The matter proceeded to trial on stipulated facts, including an exhibit demonstrating that defendant previously had been convicted of a felony. As noted, the trial court convicted defendant on both counts, and defendant appeals.

On appeal, defendant renews his argument that the state was required to allege that he had a culpable mental state with respect to his status as a felon at the time he possessed the pistol and rifle. He argues that *Van Norsdall* is no longer good law and that the analysis that this court has applied in more recent cases requires a different result. He asserts that his felon status is a material element of the crime and that, applying the statutes that address when the state must prove a culpable mental state, the state was required to prove such a culpable mental state regarding his status as a felon. Because the state was required to prove a culpable mental state regarding his felon status, defendant concludes, it also was required to allege the culpable mental state in the indictment.

The state responds that *Van Norsdall* remains good law or, at least, it is not "plainly wrong," and therefore should not be overruled. *See State v. Kittel*, 203 Or App 736, 740, 127 P3d 1204 (2006) (holding that statutory interpretations should not be overruled unless "plainly wrong"). In any event, the state maintains, even if defendant is correct about what it was required to prove at trial, defendant's challenge is only to the indictment, and the allegations in the indictment are sufficient to withstand a demurrer.

It is true, as defendant suggests, that this court has expressed some doubts as to the continuing vitality of the holding in *Van Norsdall* in light of more recent cases. *See, e.g., State v. Eberhardt*, 225 Or App 275, 279 n 1, 201 P3d 915 (2009) (noting the defendant's argument that *Van Norsdall* is no longer good law, but concluding that the case "provides no occasion for us to determine if our conclusion in *Van Norsdall* remains correct"); *State v. Rutley*, 202 Or App 639, 644, 123 P3d 334 (2005), *aff'd in part, rev'd in part*, 343 Or 368, 171 P3d 361 (2007) (stating that *Van Norsdall* was "abandoned during the second phase of our culpable mental state jurisprudence"); *State v. Andrews*, 174 Or App 354, 366, 27 P3d 137 (2001) (analyzing question of when a culpable mental state is required and disavowing *Van Norsdall*'s analysis to the extent it differed from the analysis in that case).

Most recently, in *State v. Lockamy*, 227 Or App 108, 204 P3d 822 (2009), the parties locked horns over the same argument that defendant makes in this case, *viz.*, that the felon-in-possession statute requires the state to prove a culpable mental state regarding the defendant's felon status. In that case, in which the defendant assigned error to the trial court's denial of his motion for a judgment of acquittal, we explained that, although we normally look to legislative intent to determine what the legislature intended to require the state to prove, we did not need to do so, because

"we conclude[d] that, even assuming that ORS 166.270 requires the state to prove that defendant knew of his status as a felon, the evidence on that point, viewed in the light most favorable to the state and giving the state the benefit of all reasonable inferences, was sufficient for that purpose."

*Id.* at 114; *accord State v. Schodrow*, 187 Or App 224, 229, 66 P3d 547 (2003) (concluding that it was unnecessary to "enter into that thicket of case law" governing whether the state must prove a culpable mental state).

■ So too in this case. The jurisprudence concerning whether and for which elements of a crime the state must prove a culpable mental state has been described as presenting a "confusing appearance of circularity," *State v. Blanton*, 284 Or 591, 595, 588 P2d 28 (1978); a "patchwork of appellate decisions" that has not been " 'entirely consistent,' " *Andrews*, 174 Or App at 362 (quoting *State v. Engen*, 164 Or App 591, 603, 993 P2d 161 (1999), *rev den*, 330 Or 331 (2000)); or an interpretation of statutory wording that is "gibberish," *Rutley*, 202 Or App at 643. But, in this case, the issue as it reaches us on appeal is whether the indictment is sufficient. Even assuming that the state was required to prove that defendant had a culpable mental state regarding his status as a felon, we conclude that the indictment is legally sufficient.

■ ■ We begin with general principles. Article VII (Amended), section 5, of the Oregon Constitution requires, generally, that those charged with commission of any crime punishable as a felony must be charged by grand jury indictment. This court has explained that that provision serves four functions:

> "(1) to provide notice so as to enable the defendant to prepare a defense; (2) to identify the crime so as to provide protection against additional prosecution for the same crime; (3) to inform the court as to what charges are being brought against the defendant; and (4) to ensure that the defendant is tried only for an offense that is based on facts found by the grand jury."

*State v. Burnett*, 185 Or App 409, 415, 60 P3d 547 (2002). ORS 132.550(7) provides that an indictment must contain "[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]" An indictment "fails to state facts constituting an offense when it fails to allege each of the essential elements of the offense." *State v. Wimber*, 315 Or 103, 109,

843 P2d 424 (1992). This court and the Supreme Court consistently have held that an indictment "pleaded in the language of the relevant statute ordinarily is sufficient to withstand a demurrer." *State v. Crampton*, 176 Or App 62, 67, 31 P3d 430 (2001), *overruled in part on other grounds by State v. Caldwell*, 187 Or App 720, 69 P3d 830 (2003), *rev den*, 336 Or 376 (2004); *accord State v. Lotches*, 331 Or 455, 466, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001). Consistently with the purposes noted above, Oregon courts do not require an indictment to charge a criminal offense with great specificity, relying instead on discovery " 'to inform the defendant of the details of the alleged crime that are necessary to be able to defend against the charge.' " *State v. Burns*, 213 Or App 38, 42, 159 P3d 1208 (2007), *rev dismissed*, 345 Or 302 (2008) (quoting *State v. Watson*, 193 Or App 757, 761, 91 P3d 765, *rev den*, 337 Or 476 (2004)).

With those general principles in mind, we turn to the relevant statute and the allegations in the indictment. ORS 166.270(1) provides:

> "Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm."

As we have noted, the indictment alleged that defendant "unlawfully and knowingly" had a firearm in his custody and control.

Defendant's argument regarding the sufficiency of the indictment is straightforward: Because the statute requires the state to prove a culpable mental state regarding his felon status, the state was required to allege a culpable mental state in the indictment. The state responds that, even assuming that it was required to prove a culpable mental state regarding defendant's felon status, the indictment is sufficient, because it identifies the statute under which defendant was charged and generally tracks the language of that statute. *See State v. Nussbaum*, 261 Or 87, 91, 491 P2d 1013 (1971) ("It has always been the general rule in Oregon that an indictment in the language of a statute is good on

demurrer."). Moreover, the state asserts, the mental state allegation that defendant acted "unlawfully and knowingly" in possessing the firearm should be read to apply also to the element of his status as a felon. For that proposition, the state cites *State v. Reynolds*, 229 Or 167, 172-73, 366 P2d 524 (1961); *Burns*, 213 Or App 38; and *State v. Hulsey*, 3 Or App 64, 67, 471 P2d 812 (1970).

In *Reynolds*, the defendant was indicted for violating a statute that made it a crime for a person to not stop and render aid when that person causes an accident that "results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person." *Former* ORS 483.602(1) (1953), *repealed by* Or Laws 1983, ch 338, § 978. The indictment alleged, in part, that the defendant had "become involved in an accident resulting in injury * * *, and did then and there unlawfully and feloniously fail to immediately stop such motor vehicle at the scene of such accident, or as close thereto as possible, and failed to remain at the scene of such accident and render reasonable aid and assistance * * *." 229 Or at 169. The defendant was convicted and, on appeal, argued that the indictment was inadequate because, among other things, "it did not charge the defendant with knowledge that he had injured or killed some one or had damaged a vehicle." *Id.* at 170.

The Supreme Court, "assuming without deciding" that the statute required the state to prove that the defendant knew that his vehicle was involved in an accident that resulted in injury or death to a person, concluded that the indictment was sufficient. "[W]e are of the opinion," the court stated, "that knowledge on the part of the defendant in the case before us is sufficiently alleged." *Id.* at 172. The court explained,

> "An indictment which charges that a person 'unlawfully and feloniously' performed an act is equivalent to alleging that he knowingly did so, and thus supplies the element of knowledge where that element is necessary for averment in the indictment."

*Id.* That statement really encompasses two holdings. First, the court in *Reynolds* held that the phrase "unlawfully and feloniously" is equivalent to alleging a culpable mental state.

Secondly, and perhaps less obviously, the court held that the allegation of a culpable mental state regarding one element (failing to stop) can be read to apply to another element (someone was injured or killed) that grammatically precedes the mental state allegation.

*Hulsey*, like *Reynolds*, involved the hit-and-run statute. The indictment alleged, in part, that the defendant had

> "become involved in an accident resulting in injury and death * * *, and did then and there wilfully and unlawfully fail immediately to stop said motor vehicle at the scene of said accident or as close thereto as possible and to remain at the scene of the accident and render reasonable assistance * * *."

*Hulsey*, 3 Or App at 66. As in *Reynolds*, the defendant argued that the indictment must charge that he knew that his vehicle was involved in an accident. This court, following the analysis in *Reynolds*, concluded that the indictment was adequate. *Hulsey*, 3 Or App at 68.

Finally, in *Burns*, another hit-and-run case, the defendant argued that the indictment was inadequate because it did not allege that he knew that there were injuries resulting from the accident, or even that he knew such injuries were likely. *See State v. Van Walchren*, 112 Or App 240, 245, 828 P2d 1044, *rev den*, 314 Or 574 (1992) (holding that the state must establish that the defendant acted knowing that he had been in an accident that was "likely to have resulted in injury or death"). Although the indictment in *Burns* alleged that the defendant had left the scene "unlawfully and knowingly," it did not allege any mental state with respect to the element that there was an accident resulting in injuries. 213 Or App at 41. Reviewing the case on appeal from the denial of a motion in arrest of judgment—and thus with a less exacting standard—we rejected the defendant's argument. We applied the general rule regarding the sufficiency of indictments:

> "The indictment in this case alleged that defendant 'was involved in an accident that resulted in physical injury * * * and did unlawfully and knowingly fail to remain at the scene of the accident.' That allegation tracks the language of the statute and the case law construing it. It is not so inscrutable as to wholly fail to state an offense. To the

contrary, the wording is more than adequate to 'enable a person of common understanding to know what is intended.' *Wimber*, 315 Or at 109. We conclude that the trial court did not err in denying defendant's motion in arrest of judgment."

*Burns*, 213 Or App at 44.

This case is governed by *Reynolds*, *Hulsey*, and *Burns*. The indictment for each count included the caption, "FELON IN POSSESION OF A FIREARM ORS 166.270." *See Crampton*, 176 Or App at 69 (looking at caption in determining sufficiency of indictment); *see also State v. Jennings*, 131 Or 455, 461, 282 P 560 (1929) ("The rules for the construction of indictments * * * contemplate that the meaning is to be determined from the whole instrument and not from any part alone."). In this case, the state alleged that defendant "unlawfully and knowingly" had a firearm in his possession. Although it may be debated whether that mental state allegation grammatically can be applied to the preceding allegation that defendant is a felon, that is precisely the approach that the courts took in *Reynolds*, *Hulsey*, and *Burns*. In each case, the court assumed that the state was required to prove that the defendant knew that someone had been injured. In each case, the indictment alleged a culpable mental state only with regard to the allegation that the defendant failed to stop. And yet, in each case, the court held that the indictment was sufficient. Those cases are indistinguishable from this case.

Defendant acknowledges both the general principle that an indictment in the language of a statute generally is adequate and the holdings in *Reynolds*, *Hulsey*, and *Burns*. Regardless, he argues, each of those cases stands only for the proposition that the indictment was sufficient to fulfill the "notice" objective of indictments. Defendant emphasizes that one of the functions of an indictment is to "ensure that the defendant is tried only for an offense that is based on facts found by the grand jury." *Burnett*, 185 Or App at 415. He argues,

"The fact that the indictment identified the [felon in possession] statute in the caption and alleged 'unlawfully and knowingly' may establish that the indictment was sufficient to give defendant notice, but it does not establish

that the grand jury considered, much less found, that defendant knew, or was reckless or criminally negligent in failing to know, that he was a felon."

Defendant relies on *Burnett* to support his argument.

*Burnett* involved a prosecution for fleeing or attempting to elude a police officer. Under ORS 811.540(1), a person commits the crime of fleeing or attempting to elude a police officer only if the person flees from

"[a] police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle [and who] gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren[.]"

The indictment in *Burnett* included the name of the crime and the relevant statute in the caption and alleged that the defendant "being an operator of a motor vehicle * * *, and having been given a signal to stop by a police officer, did get out of the vehicle and unlawfully and knowingly flee the police officer[.]" 185 Or App at 412. The defendant argued that the indictment was defective because it did not allege that the officer was "in uniform and prominently displaying the police officer's badge" or that the officer was "operating a vehicle appropriately marked" as such. *Id.*

The parties in *Burnett*, analogously to the parties in this case, first disagreed about whether the state was required to prove that the officer was in uniform or in an appropriate vehicle. We concluded that those facts were a material element of the crime of fleeing or attempting to elude a police officer. *Id.* at 413-14. However, in *Burnett*, we determined that that did not end the inquiry regarding the sufficiency of the indictment:

"The fact that the element is material or essential and is not expressly set forth in the indictment does not automatically render the indictment fatally flawed, however, because an indictment need not be pleaded in the identical language of the relevant statute. Instead, under ORS 132.540(3), '[w]ords used in a statute to define a crime need not be strictly pursued in the indictment, but other words

conveying the same meaning may be used.' When an indictment is not pleaded in the exact language of the statute, it may still withstand a challenge that the facts stated fail to state a crime so long as it contains

> " '[a] statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended[.]'

"ORS 132.550(7)[.]"

*Id.* at 414-15. We concluded that the indictment did not include wording that could be viewed as describing the missing essential element, that is, that the officers were in uniform and prominently displaying their badges or that they were operating an appropriately marked police vehicle. "No facts are alleged," we explained, "as to how defendant would know that the person attempting to stop him was, in fact, a police officer." *Id.* at 415.

In *Burnett*, we distinguished our decision in *Crampton. Burnett,* 185 Or App at 415. We explained that there was no language in the indictment from which it could be understood that the officer whom the defendant allegedly was eluding was in uniform displaying a badge or was driving a marked police car. *Id.* at 416. Moreover, we pointed out, the attempting to elude statute

> "sets forth two different ways that a police officer may make known to the person operating the motor vehicle that he or she is a police officer; the officer may do so either by being in uniform and displaying a badge or by driving a marked police vehicle. ORS 811.540(1)(b). Because the indictment here failed to allege which, if either, was applicable in this case, defendant was not put on notice as to which theory the state was proceeding under."

*Id.* at 415.

Most directly relevant to defendant's argument in this case, we concluded, while agreeing that the indictment satisfied most of the functions of an indictment, that it did not satisfy the requirement that a defendant be tried only for an offense that is based on facts found by the grand jury indicting him. "[W]ithout the inclusion in the indictment of

the elements of this offense set forth in ORS 811.540(1)(b)," we stated, "we cannot say with certainty that the grand jury based the indictment on facts that satisfy this element of the crime." *Id.* at 416. Defendant asserts in this case that, under *Burnett*, the state's failure to allege a culpable mental state regarding his status as a felon means that the indictment was deficient because it did not ensure that the grand jury "considered, much less found, all the elements of the offense."

Defendant is attempting to place more weight on the holding in *Burnett* than it can bear, for several reasons. We read *Burnett* as stating a narrow exception to the established rule that the primary function of an indictment is to provide notice to a defendant as to what crime he is being prosecuted for. *Burnett* held only that, when an indictment completely lacks language regarding an essential element of a crime, that indictment is insufficient. But when, as in *Reynolds* and *Burns*, the element is alleged—in this case, that defendant was a felon—but reference to other language in the indictment is needed only to "round out" the allegation, it is governed by the more general rule that an indictment is sufficient if it is framed "in such manner as to enable a person of common understanding to know what is intended[.]" ORS 132.550(7). As we said in *Eberhardt*, which addressed this very issue,

> "[t]he indictment identified the crime charged by statutory citation. That identification protected defendant against additional prosecution for the same crime. Because the indictment charged the crime using the wording of ORS 166.270 and pleaded that defendant acted 'unlawfully and knowingly,' we are satisfied that defendant was tried for an offense that was based on facts found by the grand jury."

225 Or App at 280-81.

Affirmed.