704 December 20, 2023 No. 675

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRIAN LEE WEHR,
*Defendant-Appellant*.

Linn County Circuit Court
21CR21149; A176420

David E. Delsman, Judge.

Submitted April 24, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Bruce A. Myers, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Greg Rios, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals from a judgment of conviction for two counts of harassment constituting domestic violence, ORS 166.065, and two counts of assault in the fourth degree constituting domestic violence, ORS 163.160. On appeal, he raises three assignments of error. In the first and second, he argues that the trial court erred when it failed to instruct the jury that it must find that he acted with criminal negligence with respect to the physical injury element of assault in the fourth degree. In the third, he argues that the trial court erred when it admitted hearsay statements in a 9-1-1 call because the state failed to prove that the declarant was unavailable. For the following reasons, we affirm.

We briefly recount the facts that are relevant to our decision. Defendant's convictions were based upon an incident in which defendant was involved in a physical altercation with his 11-year-old daughter, L, and her older cousin, B. L had gone to B's house for the afternoon. Defendant found L at the house and was enraged that she was there. Defendant began angrily yelling obscenities at L to get in his truck. He also spit on both L and B and pushed B into the bathroom. B called 9-1-1 to report defendant's behavior and to ask for law enforcement assistance. After the call, B and L tried to leave in B's car. While L was crawling into the car, defendant grabbed her leg and pulled on it "really hard" so that it "really hurt." Defendant then punched the driver's side window and broke it, and the glass shattered onto B's face. Defendant continued to angrily yell obscenities throughout the interaction with L and B.

L and B were eventually able to leave, and B drove them to the fire department, where law enforcement officers responded. An investigating officer saw L limping and observed cuts on her right shin and a bruise on her foot. The officer also observed that B had multiple cuts on her face and arms from the shattered window glass, a bruised wrist, and an injured finger that she could not move without pain.

In his first and second assignments of error, defendant argues that the trial court erred when it did not instruct the jury that it had to find that he acted with at

least a criminally negligent mental state with regard to the physical injury element of his fourth-degree assault charges. Defendant concedes that his claim is unpreserved, and he asks us to review for plain error.

We agree with defendant that under the current state of the law it was plain error for the trial court not to instruct the jury on a culpable mental state for the result element of fourth-degree assault. *See State v. Owen*, 369 Or 288, 322, 505 P3d 953 (2022) (explaining that absent legislative intent to the contrary "the mental states of intentional, reckless, and criminal negligence will apply to result elements"); *State v. McKinney/Schiffer*, 369 Or 325, 327, 505 P3d 946 (2022) (holding that *Owen* errors are "plain error" for purposes of preservation). However, we have no discretion to correct the error because the instructional error is harmless on these facts. *See State v. Horton*, 327 Or App 256, 262, 535 P3d 338 (2023) ("We cannot reverse a judgment based on a harmless error, so if the error was truly 'harmless,' then we have no discretion and must affirm.").

An "error is harmless if there is little likelihood that the error affected the verdict or substantially affected the defendant's rights." *State v. Garcia*, 284 Or App 357, 363, 392 P3d 815, *rev den*, 361 Or 645 (2017). To determine whether an instructional error is harmless in the context of the culpable mental state, the question "is not whether a jury *could* have found defendant to have the requisite mental state on this record; rather, it is whether there is some likelihood that the jury might *not* have been persuaded that he had the requisite mental state, had it considered that issue." *State v. Stone*, 324 Or App 688, 695, 527 P3d 800 (2023) (emphases in original). In assessing harmlessness, "we consider the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue." *Owen*, 369 Or at 323-24 (internal quotation marks omitted).

The jury convicted defendant of fourth-degree assault after hearing evidence that defendant pulled on L's leg so hard that it "really hurt" and caused her to limp, as well as evidence that, after defendant punched a car window

so hard that it shattered, B had multiple cuts on her face and arms as well as a bruised wrist and an injured finger that she could not move without pain. A defendant acts with criminal negligence when the defendant "fails to be aware of a substantial and unjustifiable risk" such that "the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10). The jury found that defendant's conduct—pulling an 11-year-old's leg to prevent her from crawling into a car to escape him and punching a car window so hard that it shattered while in a state of rage—was, at a minimum, reckless.[1] We conclude that there is little likelihood that the jury might not have been persuaded that he was at least criminally negligent with respect to the fact that B and L could suffer physical injury[2] as a result of those actions, given that defendant did not offer a defense theory for his intent in pulling L's leg and the jury rejected his theory that he was merely trying to get B's attention when he punched the window.

In his third assignment of error, defendant argues that the trial court erred when it admitted B's 9-1-1 call because the state failed to prove that B was unavailable. On appeal, defendant bases his argument on Article I, section 11, of the Oregon Constitution. However, defendant never raised an Article I, section 11, challenge to the trial court. Instead, defendant's challenge was based on the Sixth Amendment to the United States Constitution as interpreted in *Crawford v. Washington*, 541 US 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004), and the resulting arguments focused on a disagreement as to whether the statements were testimonial or not.

We disagree with defendant's argument that raising a Sixth Amendment confrontation challenge was

---

[1] Defendant was charged with "unlawfully and recklessly caus[ing] physical injury" to B (Count 2) and with "unlawfully and intentionally, knowingly and/or recklessly caus[ing] physical injury" to L (Count 6). A defendant acts recklessly when the defendant "is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur" and the risk is "of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(9).

[2] "Physical injury" is an "impairment of physical condition or substantial pain." ORS 161.015(7).

sufficient to also preserve an Article I, section 11, challenge, because the legal analysis for each of those rights is completely different. Claims under Article I, section 11, are analyzed under the test from *Ohio v. Roberts*, 448 US 56, 100 S Ct 2531, 65 L Ed 2d 597 (1980), which was explicitly overruled in *Crawford*. *State v. Belden*, 369 Or 1, 9-10, 499 P3d 783 (2021). Thus, making a "*Crawford*" claim, as defendant did here, would in no way alert the trial court that he was also seeking to invoke Article I, section 11. We are similarly unpersuaded that the fact that we look to our state constitution first when presented with a claim of constitutional error cures any failure to raise the state constitutional issue in the trial court. Moreover, the error that defendant identifies on appeal—the lack of proof of unavailability—was never discussed below, either in relation to the Sixth Amendment claim he did raise or as part of an Article I, section 11, claim. Defendant's claim is thus unpreserved.

Defendant does not ask us to review for plain error. Even if he had, and even if we found the error to be plain, we would not exercise our discretion to correct it, given that doing so would undermine the purposes for preservation, most notably the opportunity to develop the record on a fact-based inquiry. *See State v. Dilallo*, 367 Or 340, 347, 478 P3d 509 (2020) ("The fact that the opposing party may need to take additional steps to develop the record in order to address an assignment of error is one of the reasons that a timely objection is required.").

Affirmed.